UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICARDO BONVICIN, an individual; and GLORIA BONVICIN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BANK OF AMERICA CORPORATION; BANK OF AMERICA, NATIONAL ASSOCIATION; BAC HOME LOANS SERVICING, LP; NATIONSTAR MORTGAGE LLC, <br><br> Defendants. | Case No.: 2:14-cv-01279-GMN-VCF <br><br> **ORDER** |

Pending before the Court is the Motion for Summary Judgment (ECF No. 15) filed by Defendants Bank of America Corporation ("BAC"), Bank of America, N.A., on its own behalf and as successor by merger to BAC Home Loans Servicing, LP ("BANA"), and Nationstar Mortgage, LLC ("Nationstar") (collectively, "Defendants"). Plaintiffs Ricardo and Gloria Bonvicin (collectively, "Plaintiffs") filed a Response (ECF No. 21), and Defendants filed a Reply (ECF No. 23).

I.    **BACKGROUND**

This case arises out of a Trial Period Plan ("TPP") agreement that Plaintiffs negotiated with BANA in June 2009 as part of the Federal Home Affordable Modification Program ("HAMP"). (Compl. ¶ 82, ECF No. 1-1; Ex. 6 to Compl., ECF No. 1-3). The TPP was set to run from June 2009 to September 2009. (Ex. 6 to Compl.). However, in June 2010, BANA informed Plaintiffs' that their loan was ineligible for a Home Affordable Modification. (Compl. ¶ 86; Ex. 6 to Response, ECF No. 21-1).

Plaintiffs filed the instant suit in state court on June 2, 2014, alleging the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; and (4) violations of the Nevada Deceptive Trade Practices Act. (Compl. ¶¶ 88–119). On August 5, 2014, Defendants removed the case to this Court. (Pet. Removal, ECF No. 1). Defendants now bring the instant Motion for Summary Judgment. (ECF No. 15).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In

contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

**A. Breach of Contract**

Plaintiffs' first cause of action alleges a breach of contract claim. (Compl. ¶¶ 88–103). A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

Plaintiffs allege that "[b]y failing to offer Plaintiffs a permanent HAMP modification, [BANA] breached their contract with Plaintiffs." (Compl. ¶ 95). Pursuant to the TPP, "[i]f [Plaintiffs were] in compliance with th[e] Trial Period Plan … and [their] representations … continue[d] to be true in all material respects, then [BANA would] provide [Plaintiffs] with a Home Affordable Modification Agreement ('Modification Agreement') … that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." (Ex. 3 to Response, ECF No. 21-1). Accordingly, BANA's obligation to provide Plaintiffs with a Home Affordable Modification Agreement depended upon Plaintiffs' compliance with the TPP.

Defendants assert that "[t]he undisputed facts show that Plaintiffs' contention that BANA breached the TPP is without merit." (Mot. Summ. J. 9:10–11, ECF No. 15). Specifically, Defendants contend that Plaintiffs' breach of contract claim fails because "Plaintiffs breached the TPP by failing to provide the documentation necessary to verify their eligibility for a loan modification." (*Id.* 9:11–12). Moreover, Defendants assert that, "[w]hen Plaintiffs failed to provide these documents, BANA extended the time for Plaintiffs to comply and made numerous efforts to obtain the documentation needed." (*Id.* 9:12–14). Finally, Defendants assert that, "[w]hen BANA finally received the documents necessary to determine

Plaintiffs' eligibility for a modification, BANA promptly reviewed the documentation and informed Plaintiffs that the Loan was not eligible to be modified under HAMP." (*Id.* 9:16–19; Ex. J to Mot. Summ. J., ECF No. 16).

To support these assertions, Defendants submit letters that BANA sent to Plaintiffs on November 16, 2009, November 30, 2009, December 22, 2009, and January 22, 2010, regarding the status of the TPP. (*See* Exs. F–I to Mot. Summ. J., ECF No. 16).  Each letter explained to Plaintiffs that, although the TPP had expired, BANA had not yet received the required documentation from Plaintiffs. (*Id.*).  Furthermore, in each letter, BANA extended the deadline of the TPP to provide Plaintiffs further opportunity to provide the required documentation in compliance with the TPP. (*Id.*).

In response, Plaintiffs maintain that they "responded to each and every request by [BANA] to submit additional documentation," and "[a]*t the very least*, there is a genuine issue of material fact as to whether [Plaintiffs] submitted the required documentation to [BANA]." (Response 8:12–14, ECF No. 21).  To support this assertion, Plaintiffs attach two self-serving declarations, which merely state that, "[s]ince the TPP period began, and at all times relevant, my wife and I responded to all document requests made by [BANA] by timely supplying all of the requested documents." (Exs. 1–2, ECF No. 21-1).  The fact that a declaration is self-serving is not a reason to disregard it on summary judgment. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007).  Generally, the fact that an affidavit is self-serving "bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *Id.* (quoting *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999)).  However, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007) (quotation omitted).

Here, because Plaintiffs' declarations lack detailed facts and supporting evidence, the Court finds that Plaintiffs' self-serving declarations fail to create a genuine issue of material fact as to whether Plaintiffs' timely complied with the TPP by providing the documentation necessary to determine Plaintiffs' eligibility for a modification. Accordingly, because Plaintiffs have failed to establish their performance under the TPP, Plaintiffs cannot establish Defendants' breach, and Defendants are entitled to summary judgment as to this claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' second cause of action alleges a breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 88–103). The covenant of good faith and fair dealing means "that each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991) (quoting jury instructions). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Id.* "[G]ood faith is a question of fact." *Consol. Generator–Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (denying summary judgment on implied covenant of good faith claim because the court had found genuine issues of material fact as to other contract-based claims). However, "when there is no factual basis for concluding that [a defendant] acted in bad faith, a court may determine the issue of bad faith as a matter of law." *Andrew v. Century Sur. Co.*, No. 2:12–cv–0978, 2014 WL 1764740, at *10 (D. Nev. Apr. 29, 2014) (citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1355 (Nev. 1986)).

Here, Plaintiffs assert that Defendants acted in bad faith by accepting twenty-six trial payments "before finally telling [Plaintiffs] that, in essence, you never even had a *chance* to get a permanent loan modification…but thanks for the payments anyways!" (Response 10:10–14).

However, as explained above, BANA extended the deadline of the TPP multiple times to provide Plaintiffs further opportunity to submit the required documentation in compliance with the TPP. (*See* Exs. F–I to Mot. Summ. J., ECF No. 16). The Court finds that Plaintiffs have not provided sufficient evidence to create a genuine issue of material fact as to whether Defendants acted in bad faith. Accordingly, Defendants are entitled to summary judgment as to this claim.

### C. Promissory Estoppel

Plaintiffs' third cause of action alleges a promissory estoppel claim. (Compl. ¶¶ 104–11). To prove promissory estoppel: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the part[ies] asserting the estoppel must be ignorant of the true state of facts; (4) [they] must have relied to [their] detriment on the conduct of the party to be estopped." *Pink v. Busch*, 689, 691 P.2d 456, 459 (Nev. 1984).

Here, Plaintiffs assert that BANA "clearly made promises via the TPP Agreement that were sufficiently clear and unambiguous in its terms," and "Plaintiffs relied on these promises to their detriment." (Response 10:25–27). Moreover, Plaintiffs contend that "genuine issues of material fact exist as to whether [Plaintiffs] submitted all required documentation and detrimentally relied on [BANA]'s false promises in the TPP Agreement." (*Id.* 11:1–3).

Plaintiffs' arguments related to their promissory estoppel claim are nearly identical to their arguments related to their breach of contract claim. As discussed previously, Plaintiffs' self-serving declarations fail to create a genuine issue of material fact as to whether Plaintiffs' timely complied with the TPP by providing the documentation necessary to determine Plaintiffs' eligibility for a modification. Accordingly, Plaintiffs have not provided sufficient evidence to create a genuine issue of material fact as to whether they relied to their detriment

on a promise made by Defendants.  As a result, Defendants are entitled to summary judgment as to this claim.

### D. Deceptive Trade Practices Act

Plaintiffs' fourth cause of action alleges a claim of deceptive trade practices pursuant to NRS §§ 598.0915 and 598.092. (Compl. ¶¶ 112–19).  Under subsection 598.0915, a deceptive trade practice includes knowingly making a false representations in a transaction.  Moreover, pursuant to subsection 598.092(8), a deceptive trade practice also includes knowingly misrepresenting the legal rights, obligations, or remedies of a party to a transaction.

However, many courts have recognized that the Deceptive Trade Practices Act does not apply to real estate loan transactions but to the sale of goods and services. *See Reyna v. Wells Fargo Bank*, N.A., No. 2:10–cv–01730–KJD–RJJ, 2011 WL 2690087, at *9 (D. Nev. July 11, 2011) ("N.R.S. § 598 ... applies only to goods and services and not to real estate loan transactions."); *see also Alexander v. Aurora Loan Servs.*, No. 2:09–cv–1790–KJD–LRL, 2010 WL 2773796, at *2 (D. Nev. July 8, 2010) ("Plaintiff's claim deals with the sale or lease of real property, not goods or services; therefore [N.R.S. § 598] does not provide an avenue of relief to [p]laintiff."); *Parker v. Greenpoint Mortg. Funding*, No. 3:11–cv–00039–ECR–RAM, 2011 WL 2923949, at *2 (D. Nev. July 15, 2011) ("[N.R.S. § 598] does not cover a mortgage foreclosure").  Therefore, the Court finds that this claim fails as a matter of law.  Accordingly, Defendants are entitled to summary judgment as to this claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

The Clerk of the Court shall enter judgment accordingly and close this case.

**DATED** this __17__ day of February, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge